UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CUNNINGHAM PROPERTY
MANAGEMENT TRUST,

    Plaintiff,

v.

ASCENT RESOURCES – UTICA, LLC,

    Defendant.

Case No. 2:16-cv-957
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendant Ascent Resources – Utica, LLC's Motion to Dismiss [ECF No. 22]. For the following reasons, ARU's Motion is **DENIED** without prejudice to later refiling, and this case is **STAYED**.

## I.

Plaintiff Cunningham Property Management Trust ("Cunningham") owns approximately 272 acres of real property in Harrison County, Ohio. (Am. Compl. ¶ 6 [ECF No. 20].) The Cunningham property is burdened by two separate oil-and-gas leases, one dated December 11, 1982, and covering about 88 acres and another dated January 12, 1983, and covering about 183 acres. (*Id.* ¶¶ 29–31.) The leases use a standard, pre-printed form and include identical royalty provisions:

> 5. In consideration of the premises the Lessee covenants and agrees: (A) To deliver to the credit of the Lessor in tanks or pipe lines, as royalty, free of cost, the equal one-eighth (1/8) part of all oil produced and saved from the premises, or at Lessee's option to pay Lessor the market price for such one-eighth (1/8) royalty oil at the published rate for oil of like grade and gravity prevailing on the date such oil is run into tanks or pipe lines. (B) To pay to the Lessor, as royalty for the gas marketed and used off the premises and produced from each well drilled thereon, the sum of one-eight (1/8) of the wellhead price paid to Lessee per thousand cubic feet of such gas so marketed and used, measured in accordance

> with Boyle's Law for the measurement of gas at varying pressures . . . . (C) Lessee to deduct from payments in (A) and (B) above Lessor[']s prorata share of any severance (excise) tax imposed by any governmental body. (D) In the event Lessee does not sell the gas to others, Lessor shall be paid on the basis of The East Ohio Gas Company field market price at the wellhead for gas of like kind and quality, and on the same basis that East Ohio would pay for such gas, including any escalation in price that East Ohio would pay for such gas as if a contract for the sale of same had been entered into at the time of initial production.

(Leases at PageID 244, 246 [ECF Nos. 20-1, 20-2]; *see* Am. Compl. ¶ 32.) The leases also contain identical notice provisions:

> 18. In the event Lessor considers that Lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify Lessee in writing setting out specifically in what respects Lessee has breached this contract, Lessee shall then have thirty (30) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of thirty (30) days after service of such notice on Lessee.

(Leases at PageID 245, 247.) And they contain identical disclaimers:

> 19. . . . It is mutually agreed that this instrument contains and expresses all of the agreements and understandings of the parties in regard to the subject matter thereof, and no implied covenant, agreement or obligation shall be read into this agreement or imposed upon the parties or either of them.

(*Id.*) Cunningham eventually acquired the property's surface and mineral rights and is the current Lessor under the leases. (Am. Compl. ¶ 33.) Defendant Ascent Resources – Utica, LLC ("ARU") is the current Lessee. (*Id.* ¶ 35.)

Cunningham alleges that it began receiving royalty payments, with associated royalty statements in early 2016. (Am. Compl. ¶ 41.) Those payments, however, contained substantial "post-production" cost deductions for items such as compression, processing, treating, transportation, fuel, marketing, and gathering. (*Id.* ¶ 42.) The deductions were not explained in

the royalty statements, Cunningham alleges. (*Id.* ¶ 43.) And the deductions purportedly varied without explanation or good cause. (*Id.* ¶ 44.)

Cunningham alleges that ARU is not entitled to deduct post-production expenses under the leases. (Am. Compl. ¶ 48.) According to Cunningham, the leases require payment of "one-eighth of the entire gross realized sales revenue of the sale of hydrocarbons excepting only deductions for severance (excise) taxes prorated to [Cunningham's] royalty." (*Id.*)

To the extent that ARU is entitled to deduct post-production expenses, Cunningham alleges that ARU "may not deduct for expenses related to any infrastructure or efforts that occur *before* the product (natural gas, oil, or condensate) reaches the point of sale to the market." (Am. Compl. ¶ 49.) According to Cunningham, ARU cannot deduct post-production expenses because ARU has an implied duty to market and an implied duty to act as a reasonable prudent operator. (*Id.* ¶ 51.) These implied duties purportedly obligate ARU to market and sell its gas at the highest price obtainable and, therefore, prohibit ARU from imposing the costs of making the gas marketable on Cunningham. (*See id.* ¶¶ 51–52.)

Cunningham further alleges that any deductions ARU may be permitted to take for post-production expenses must be (a) reasonable, (b) incurred to alter (or enhance) an already marketable product, and (c) relate to an expense that caused Cunningham's royalty to increase in proportion with the assessed costs. (Am. Compl. ¶ 57.) ARU's deductions, assuming they are permitted, must comply with these requirements because the leases purportedly prohibit ARU from taking impermissible deductions or inflating the amount of permissible deductions. (*Id.*) And Cunningham alleges that ARU has the burden of establishing that these requirements are met. (*Id.* ¶ 58.)

3

None of the deductions taken by ARU have complied with these requirements, Cunningham alleges. (Am. Compl. ¶ 59.) In support of this assertion, Cunningham points to a declaration attached to its Amended Complaint from Dr. Benjamin H. Thomas, a petroleum engineer and retired professor of petroleum engineering at Marietta College. (*See id.* ¶¶ 60–61.) Dr. Thomas reviewed a sampling of Cunningham's monthly landowner royalty statements. (Thomas Decl. ¶ 7 [ECF No. 20-9].) Based on this review, Dr. Thomas opines that "certain natural gas post-production expenses appear to be very high and provide reason to investigate further as to whether they are proper." (*Id.* ¶ 8.) Dr. Thomas further opines that "certain deducted amounts appear not to be typical and result in a significantly lower net natural gas price being paid to the mineral interest owners." (*Id.* ¶ 9.)

Cunningham alleges that its attorney sent a letter to ARU on May 13, 2016, notifying ARU of the deduction problem and seeking an accounting and explanation of all deductions and calculations regarding royalty payments. (Am. Compl. ¶ 69; *see* May 13, 2016 Vessels Ltr. at 1–5 [ECF No. 20-5].) On September 1, 2016, Counsel for ARU wrote back indicating that he had been retained to respond to the letter and that future correspondence should be sent to him. (Am. Compl. ¶ 71; *see* Sept. 1, 2016 Abbott Ltr. at 1 [ECF No. 20-6].) Cunningham's attorney replied on September 6; he indicated that Cunningham had still not received the information it requested, that he was preparing to file a lawsuit, and that a prompt response to the original information request would be appreciated. (Am. Compl. ¶ 72; *see* Sept. 6, 2016 Vessels Ltr. at 1–2 [ECF No. 20-7].) Counsel for ARU again wrote back on September 23. (Am. Compl. ¶ 73; *see* Sept. 23, 2016 Abbott Ltr. at 1 [ECF No. 20-8].) He sent copies of the leases, the unit declarations, and the past three months of royalty statements; he clarified that any post-production cost deductions are proportional to Cunningham's royalty percentage; and he

4

requested notice of ARU's alleged breaches so that, in accordance with the leases' notice requirement, he could try to work out the issues. (Sept. 23, 2016 Abbott Ltr. at 1.)

On October 5, 2016, Cunningham brought this case against ARU and two other defendants. (Compl. at 1 [ECF No. 1].) Cunningham has since filed an Amended Complaint naming only ARU as a defendant. (Am. Compl. at 1.) Cunningham asserts five claims: (1) a request for an accounting; (2) breach of contract (encompassing several theories of breach); (3) unjust enrichment; (4) fraud; and (5) a request for injunctive and declaratory relief. (*Id.* at 21–26.) Cunningham brings its claims on behalf of itself and a putative class consisting of

> [a]ll persons or entities (including their predecessors and successors-in-interest) who have received, or who are entitled to receive, royalty payments (whether as a landowner or mineral owner) from natural gas or oil wells located within the State of Ohio and that have been owned or operated by [ARU] (or any [of ARU's] affiliates, predecessors, successors, or subsidiaries) since October 1, 2012, or for which [ARU] (or any [of ARU's] affiliates, predecessors, successors, or subsidiaries) was the "lessee" or owner of the "working interest" pursuant to any oil and gas lease associated with such wells or associated drilling units, since October 1, 2012.

(*Id.* ¶ 83.) ARU has now moved to dismiss these claims.

## II.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court will dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). An action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). When deciding a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the

5

complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The Court may consider the complaint and any accompanying exhibits. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

A complaint will survive a motion to dismiss if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement . . . showing that the pleader is entitled to relief"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The leases in this case are governed by Ohio contract law. *See Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St. 3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶¶ 2, 9. Under Ohio law, "'[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.'" *Id.* ¶ 9 (quoting *Skivolocki v. E. Ohio Gas Co.*, 313 N.E.2d 374, 375 (Ohio 1974)). When a contract is unclear or ambiguous, or when circumstances surrounding the agreement give special meaning to the plain language, extrinsic evidence is admissible to ascertain the intent of the parties. *Id.*

**B.   Notice Requirement**

ARU asserts several arguments for why the Court should dismiss Cunningham's claims.

6

Because ARU's first argument—that Cunningham failed to comply with the notice requirement found in Paragraph 18 of the leases—proves dispositive, the Court begins and ends its analysis with it. (*See* Mem. in Supp. of Mot. to Dismiss at 5–7 [ECF No. 23].) Before bringing an action under the leases, Cunningham was required to first notify ARU "in writing setting out specifically in what respects [ARU] has breached [the leases]" and then give ARU thirty days after service of the notice "to meet or commence to meet all or any part of the breaches alleged." (Leases at PageID 245, 247 [ECF Nos. 20-1, 20-2].)

Cunningham insists that it adequately pleaded its compliance with the notice requirement. (Mem. in Opp'n at 4–7 [ECF No. 25].) According to Cunningham, ARU was on notice by at least September 6, 2016 (when Cunningham's attorney sent the second letter to ARU) that Cunningham was "asserting breaches of the royalty provisions of the leases." (*See id.* at 6–7.)[1]

Paragraph 18 requires that Cunningham's notice set out specifically how ARU breached the leases. (*See* Leases at PageID 245, 247.) Cunningham's first letter, however, did not offer any specific explanation of ARU's purported breaches. (*See* May 13, 2016 Vessels Ltr. at 1–5 [ECF No. 20-5].) And, in fact, the letter did not even accuse ARU of breaching the leases. (*See id.*) The letter simply stated: "My clients are concerned regarding the deductions from their royalty payments. Accordingly, I am sending this letter seeking information. Within one month, please provide information responsive to the requests below[.]" (*Id.* at 1.) Cunningham's second letter did not accuse ARU of breaching the leases either. (*See* Sept. 6, 2016 Vessels Ltr. at 1–2 [ECF No. 20-7].) And the letter certainly did not offer a specific explanation of the purported breaches. (*See id.*) In the second letter, Cunningham's attorney advised: "I have been preparing to file a lawsuit, but I wanted to ensure that [ARU] had sufficient time to respond to my inquiry."

---

[1] Neither Cunningham nor ARU argue that the notice requirement is unclear or ambiguous. (*See* Mem. in Supp. of Mot. to Dismiss at 5–7; Mem. in Opp'n at 4–7.) And the Court does not find it to be.

(*Id.* at 1.) Cunningham suggests that this general notice of its preparation to file a lawsuit coupled with its prior inquiry about royalty calculations satisfies Paragraph 18. But given Cunningham's obligation to set out specifically how ARU breached the leases, the Court cannot reasonably infer that Cunningham complied with the leases' notice requirement.

Cunningham suggests that it complied with Paragraph 18 because its letters put ARU on "constructive notice" of Cunningham's accusations. (*See* Mem. in Opp'n at 7.) Cunningham cites a recent case from this district for the proposition that "[u]nder Ohio law, failure to comply with a contractual notice provision may be harmless if actual or constructive notice is nonetheless accomplished." *Simplifi Health Benefit Mgmt., LLC v. Cayman Islands Nat'l Ins. Co.*, No. 2:13-cv-714, 2016 WL 4131857, at *6 (S.D. Ohio Aug. 2, 2016); *see also Walker v. Barnett Mgmt., Inc.*, 8th Dist. Cuyahoga Nos. 84188, 84210, 2004-Ohio-6632, ¶ 55 (stating that constructive notice is a substitute for actual notice or knowledge and is defined as notice that the law regards as sufficient). But here, for the same reasons that Cunningham did not plausibly provide ARU with actual notice, the Court cannot reasonably infer that Cunningham provided ARU with constructive notice. The letters' general inquiry into royalty calculations and ambiguous reference to preparing a lawsuit fail to constructively notify ARU of how it specifically breached the leases. (*See* May 13, 2016 Vessels Ltr. at 1–5; Sept. 6, 2016 Vessels Ltr. at 1–2.)

Lastly, Cunningham contends that it was excused from providing notice because attempting to do so here would have been futile. (*See* Mem. in Opp'n at 6–7.) Providing notice would have been futile, Cunningham avers, because ARU has withheld the details about the royalty payments that Cunningham purportedly needed to specifically outline ARU's breaches. (*See id.* at 7.) A party is not required to perform a futile act under Ohio law. *Love v. Beck Energy*

*Corp.*, 7th Dist. No. 14 NO 415, 2015-Ohio-1283, ¶¶ 40, 53. But here, the Court cannot reasonably infer that attempting to comply with the notice requirement would have been futile.

Cunningham alleges several theories of how ARU breached the leases. (*See* Am. Compl. ¶¶ 98–99 [ECF No. 20].) One of the theories—that the leases do not permit ARU to deduct any post-production expenses from Cunningham's royalties—could have been fully explained without reference to any information other than the language found in the leases. (*See id.* ¶ 48.) As Cunningham alleged in the Amended Complaint, without additional information from ARU: "[ARU] is not entitled to deduct 'post-production' expenses as a matter of law . . . . The leases require payment of the one-eighth of the entire gross sales revenue . . . excepting only deductions for severance (excise) taxes . . . ." (*Id.*)

Cunningham's second breach of contract theory—that even if post-production expenses can be deducted, those expenses may not be deducted before the product reaches the point of sale to the market—also could have been explained to ARU without additional information. (*See* Am. Compl. ¶¶ 49–65.) And Cunningham, in fact, did explain this theory in the Amended Complaint without additional information from ARU. (*See id.*) Cunningham may not have had access to all of the evidence that supports its claim. But the leases do not require Cunningham to lay out all of its evidence prior to filing suit; they require Cunningham to set out how ARU breached the leases. (*See* Leases at PageID 245, 247.)

For its third theory, Cunningham alleges that ARU, even if it can deduct post-production costs, cannot take improper (i.e., inflated or unreasonable) deductions. (*See* Am. Compl. ¶¶ 57–58, 98.) But again, Cunningham could have explained that the deductions appear to be improper without obtaining any additional information from ARU. (*See id.* ¶¶ 57–65 (alleging the impropriety of ARU's deductions).)

And for its final theory, Cunningham alleges that ARU failed to honor Cunningham's contractual right to an accounting. (Am. Compl. ¶ 99.) Granted, ARU's failure to provide the information requested in Cunningham's first letter constitutes the alleged breach under this theory. (*See id.*; Mem. in Opp'n at 22–23.) But Cunningham's ability to explain that ARU breached the leases by failing to provide the requested information does not hinge on Cunningham obtaining the requested information. Setting out this theory of breach in a letter to ARU would not have been futile.

The Court, in sum, cannot reasonably infer that Cunningham complied with the leases' notice requirement. This conclusion does not mandate dismissal of Cunningham's claims though. The notice requirement serves an important purpose in the parties' agreement—providing ARU an opportunity to cure purported breaches prior to facing suit. (*See* Leases at PageID 245, 247; Mem. in Supp. of Mot. to Dismiss at 5.) That purpose can be satisfied here without dismissal, *see Lutz*, 2016-Ohio-7549, ¶ 9 (stating that contracts are to be interpreted to carry out the intent of the parties), which would be, in any event, without prejudice. The Court will stay the case to allow Cunningham an opportunity to comply with the leases' notice requirement and ARU an opportunity to cure the purported breaches. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (explaining that a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket").[2] If the parties are unable to resolve the case through this procedure, they shall move the Court to lift the stay.

---

[2] The notice requirement is imposed by the leases. The stay, however, is justified as to all of Cunningham's claims (and not just the breach of contract claim) because of the interdependence of those claims with the breach of contract claim. The claims for unjust enrichment and fraud (Counts 3 and 4) are premised on the same conduct that forms the basis of the breach of contract claim. (*See* Am. Compl. ¶¶ 101–116.) Cunningham has requested injunctive and declaratory relief (Count 5) "to proactively prevent future violations of the leases." (Mem. in Opp'n at 38.) And the accounting claim (Count 1) is rooted in (i) an implied right contained in the leases and (ii) an equitable request for an accounting of ARU's

Given its decision to stay the case, the Court declines to address ARU's arguments for dismissal of the claims on the merits. (*See* Mem. in Supp. of Mot. to Dismiss at 7–20.) ARU may raise these arguments again in a refiled motion to dismiss if the stay in this case is lifted.

### III.

For the reasons stated above, Defendant ARU's Motion to Dismiss [ECF No. 22] is **DENIED** without prejudice to later refiling, and this case is **STAYED**.

**IT IS SO ORDERED.**

9-25-2017
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**

---

royalty payments—payments that Cunningham is entitled to receive under the leases. (*See id.* at 23–35; Am. Compl. ¶ 92.)