UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CUNNINGHAM PROPERTY
MANAGEMENT TRUST,

    Plaintiff,

v.

ASCENT RESOURCES – UTICA, LLC,

    Defendant.

Case No. 2:16-cv-957
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendant Ascent Resources – Utica, LLC's ("ARU('s)") Motion to Dismiss. (EFC No. 22.) For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** ARU's Motion.

### I.

Plaintiff Cunningham Property Management Trust ("Cunningham") owns approximately 272 acres of real property in Harrison County, Ohio. (Am. Compl. ¶ 6, ECF No. 20). The property is burdened by two separate oil and gas leases, one dated December 11, 1982, covering about 88 acres, and another dated January 12, 1983, covering about 183 acres. (*Id.* ¶¶ 29–31). The leases use a standard, pre-printed form and include identical royalty provisions:

> 5. In consideration of the premises the Lessee covenants and agrees: (A) To deliver to the credit of the Lessor in tanks or pipe lines, as royalty, free of cost, the equal one-eighth (1/8) part of all oil produced and saved from the premises, or at Lessee's option to pay Lessor the market price for such one-eighth (1/8) royalty oil at the published rate for oil of like grade and gravity prevailing on the date such oil is run into tanks or pipe lines. (B) To pay to the Lessor, as royalty for the gas marketed and used off the premises and produced from each well drilled thereon, the sum of one-eighth (1/8) of the wellhead price paid to Lessee per thousand cubic feet of such gas so marketed and used, measured in accordance with Boyle's Law for the

1

> measurement of gas at varying pressure . . . . (C) Lessee to deduct from payments in (A) and (B) above Lessors prorata share of any severance (excise) tax imposed by any governmental body. (D) In the event Lessee does not sell the gas to others, Lessor shall be paid on the basis of The East Ohio Company field market price at the wellhead for gas of like kind and quality, and on the basis that East Ohio would pay for such gas, including any escalation in the price that East Ohio would pay for such gas as if a contract for the sale of same had been entered into at the time of initial production.

(Leases at PageID 244, 246, EFC Nos. 20-1, 20-2; *see* Am. Compl. ¶ 32). The leases also contain identical notice provisions:

> 18. In the event Lessor considers that Lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify Lessee in the writing setting out specifically in what respects Lessee has breached this contract. Lessee shall then have thirty (30) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of thirty (30) days after service of such notice on Lessee.

(Leases at PageID 245, 247.) And they contain identical disclaimers:

> 19. . . . It is mutually agreed that this instrument contains and expresses all of the agreements and understandings of the parties in regard to the subject matter thereof, and no implied covenant, agreement or obligation shall be read into this agreement or implied upon the parties or either of them.

(Leases at PageID 245, 247.) Cunningham eventually acquired the property's surface and mineral rights and is the current Lessor under the leases. (Am. Comp. ¶ 33). Defendant ARU is the current Lessee. (*Id.* ¶ 35).

Cunningham alleges that it began receiving royalty payments, with associated royalty statements in early 2016. (Am. Compl. ¶ 41). Those payments contained substantial "post-production" cost deductions for items such as compression, processing, treating, transportation, fuel, marketing, and gathering. (*Id.* ¶ 42). The deductions were not explained in the royalty statements, Cunningham alleges. (*Id.* ¶ 43). And the deductions purportedly varied without explanation or good cause. (*Id.* ¶ 44). Cunningham alleges that ARU is not entitled to deduct

2

post-production expenses under the leases, and if they are so entitled the deductions must be reasonable. (Am. Compl. ¶ 48).

ARU moved to dismiss Cunningham's complaint for, *inter alia*, failure to comply with the notice requirement set out in the leases. (ECF Nos. 22, 23; Leases at PageID 245, 247.) Once that motion to dismiss was fully briefed (ECF Nos. 25, 28), this Court issued a decision denying it without prejudice to refiling and stayed the case. The Court concluded:

> The Court, in sum, cannot reasonably infer that Cunningham complied with the leases' notice requirement. This conclusion does not mandate dismissal of Cunningham's claims though. The notice requirement serves an important purpose in the parties' agreement—providing ARU an opportunity to cure purported breaches prior to facing suit. (*See* Leases at PageID 245, 247; Mem. in Supp. of Mot. to Dismiss at 5.) That purpose can be satisfied here without dismissal, *see Lutz*, 2016-Ohio-7549, ¶ 9 (stating that contracts are to be interpreted to carry out the intent of the parties), which would be, in any event, without prejudice. The Court will stay the case to allow Cunningham an opportunity to comply with the leases' notice requirement and ARU an opportunity to cure the purported breaches. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (explaining that a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket"). If the parties are unable to resolve the case through this procedure, they shall move the Court to lift the stay.
>
> Given its decision to stay the case, the Court declines to address ARU's arguments for dismissal of the claims on the merits. (*See* Mem. in Supp. of Mot. to Dismiss at 7–20.) ARU may raise these arguments again in a refiled motion to dismiss if the stay in this case is lifted.

(ECF No. 32 at 10–11) (omitting footnote that explained that the stay was justified as to all of Cunningham's claims (and not just the breach of contract claim) because of the interdependence of those claims with the breach of contract claim).

On November 6, 2017, the parties moved to lift the stay (ECF No. 33), which this Court granted (ECF No. 34). The Court held a status conference at which the parties agreed that notice was no longer an issue. The parties requested additional briefing to discuss the impact of *Lutz v. Chesapeake Appalachia, L.L.C.*, 2017 WL 4810703, *7 (N.D. Oh. Oct. 25, 2017) ("*Lutz II*") on ARU's Motion to Dismiss.

3

ARU filed its Supplemental Memorandum Supporting the Motion to Dismiss (ECF No. 37), to which Cunningham filed a Supplemental Memorandum in Opposition (ECF No. 38). ARU then filed its Supplemental Reply in Support of its Motion to Dismiss (ECF No. 39). ARU's Motion to Dismiss is now ripe for review.

## II.

ARU moves to dismiss Cunningham's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## III.

In the Amended Complaint, Cunningham asserts claims for (A) breach of contract, (B) a request for an accounting; (C) unjust enrichment, and (D) fraud.

### A. Breach of Contract

ARU moves to dismiss Cunningham's breach of contract claim, arguing that it is either (1) inadequately pleaded or (2) fails to state a claim under the leases.

### 1. Adequacy of the Pleading

ARU first argues that Cunningham's breach of contract claim is inadequately pleaded because it "fails to allege what provision of the Leases was breached, and how." (Mem. in Supp. of Mot. to Dismiss at 7, ECF No. 23). This Court, however, disagrees.

Cunningham specifically alleges that the royalty clause (§ 5(B)) of each lease prohibits ARU from making post-production deductions to the royalty amount. (*Id.* ¶ 32). Cunningham alleges that ARU took post-production deductions from the leases, which breached the royalty provision. (*Id.* ¶ 42; Royalty Statements at PageID 252, 281, EFC No. 20-4).

### 2. Lease Agreements

Cunningham alleges that ARU breached the terms of the lease agreements by (a) taking deductions from their royalty payments that are not allowed as a matter of law, or (b) if ARU is allowed to deduct from the royalty payments the amounts taken were improper, and/or by (c) failing to honor Cunningham's contractual right to an accounting.

The parties agree that their dispute is governed by Ohio law. In Ohio, oil and gas leases are contracts. *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St. 3d 524, 526 (2016) ("*Lutz I*") (citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129 (1897)). And, "[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.'" *Id.* (quoting *Skivolocki v. E. Ohio Gas Co.*, 313 N.E.2d 374, 375 (Ohio 1974)). When a contract is unclear or ambiguous, or when circumstances surrounding the agreement give special meaning to the plain language, extrinsic evidence is admissible to ascertain the intent of the parties. *Id.* On the other hand, "[i]f the contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be

5

determined." *Inland Refuse Transfer Co. v. Browning Ferris Indus. Of Ohio, Inc.*, 15 Ohio St. 3d 321 (Ohio 1984).

### a. Breach of Contract Based on the Taking of Deductions

Cunningham "alleges that [ARU] breached the operative leases by taking post-production deductions when no such deductions are permitted. As noted above, the language of the leases' § 5(B) royalty clause provides for payment based on a percentage of 'the wellhead price.'" (Pl.'s Mem. in Opp. at 10, ECF No. 25.) Both parties agree that the leases' "the wellhead price" language is at the core of their dispute.

Recently, the Northern District of Ohio certified to the Supreme Court of Ohio the question of whether, in oil and gas leases, Ohio follows the "at the well" rule, or some version of what is referred to as the "marketable product" rule, which limits the deduction of post-production costs in certain circumstances. Specifically, the court certified the following question:

> Does Ohio follow the "at the well" rule (which permits the deduction of post-production costs) or does it follow some version of the "marketable product" rule (which limits the deduction of post-production costs under certain circumstances)?

*Lutz I*, 148 Ohio St. 3d at 524–25.

Declining to answer the question, the *Lutz I* court concluded that "[u]nder Ohio law, an oil and gas lease is a contract that is subject to the traditional rules of contract construction." *Id.* at 527. Therefore, the specific language of the lease agreements is controlling. *Id.* In other words, there may be times when either of these rules could be appropriately applied to oil and gas leases interpreted under Ohio law.

Upon decertification, the district court interpreted the language "at the well" as unambiguously allowing for the deduction of post-production costs. *Lutz v. Chesapeake*

6

*Appalachia, L.L.C.*, No. 4:09CV2256, 2017 WL 4810703, *7–*8, (N.D. Ohio Oct. 25, 2017) ("*Lutz II*"). The *Lutz II* court explained that "[t]he issue can . . . be put in terms of *where* the gas is to be valued for purposes of determining plaintiff's royalty payments." *Id.* at 7 (alterations in original, citation omitted). The court stated that the language "at the well" appeared meaningless in isolation because "gas is not sold at the wellhead and, thus, there are no proceeds at the wellhead." *Id.* The court continued, providing: "However, if we understand the term to 'identify the location' of natural gas valuation for calculating royalties, then the language 'has a logical purpose in the contract.'" *Id.* The *Lutz II* court concluded that "the parties' intent was that the *location* for valuing the gas for purposes of computing the royalty was 'at the well.'" *Id.* at *8.

ARU contends that because the royalty provisions of the leases in the case at bar provide for payment based on the "wellhead price," *Lutz II* counsels dismissal of Cunningham's breach of contract based on this theory. This Court agrees.

The contractual language in *Lutz II* is materially indistinguishable from the language in the leases in this case, and the *Lutz II* court's reasoning is sound. Consequently, for the same reasons found in *Lutz II*, Cunningham's claim that ARU breached their contracts by including post-production deductions in the royalty payments fails to state a claim upon which relief can be granted. Therefore, the Court **GRANTS** ARU's *Motion to Dismiss* Cunningham's breach of contract claim based upon this theory.

   b.  **Breach of Contract Based on the Amount of Deductions**

Cunningham posits that, "assuming the Court does find that post-production costs are permissible, [ARU] breached the terms of the lease agreements by taking improper (i.e., inflated

or unreasonable) deductions for post-production costs." (Pl.'s Mem. in Opp. at 19, ECF No. 25.)

ARU moves to dismiss this claim, stating:

> The Amended Complaint alleges an alternative theory that if ARU's deduction of post-production costs is authorized under the Leases and Ohio law, the deductions are wrongful because they are "very substantial," "high," "without any explanation or good cause," "very high," "atypical," "unreasonable," "improper," "inflated," and are "arbitrarily deduct[ed] . . . ." *See* Am. Compl. ¶¶ 42, 45, 50, 63-65. . . .
>
> The Amended Complaint's conclusory allegations rest in part on a declaration by a third party who makes equally conclusory allegations that ARU's costs "appear very high" based on a sampling of Cunningham's royalty check stubs. *See id.* ¶¶ 60-65; Ex. 9. This alternative theory lacks factual plausibility and also does not establish a breach of any provision in the Leases.

(Mot. to Dismiss at 14, ECF No. 23.)

The third-party declaration to which ARU refers was executed by Dr. Benjamin Thomas, a petroleum engineer and retired professor of petroleum engineering, who reviewed the royalty statements and "conclude[d] that certain natural gas post-production expenses appear to be very high and provide reason to investigate further as to whether they are proper." (Am. Compl. ¶ 63; Declaration of Benjamin H. Thomas at PageID 292, ECF No. 20-9). He continued, "certain deducted amounts appear not to be typical and result in a significantly lower net natural gas price being paid to the mineral interest owners." (*Id.* ¶ 64.). Cunningham also attached to the Amended Complaint monthly royalty statements dating from March 2016 through August 2016, purported to vary substantially without "explanation or apparent good cause." (Cunningham Royalty Statements at PageID 252-281, ECF No. 20-4; Am. Compl. ¶ 44). Allegedly, by April of 2016, ARU "was deducting *over 68%* of the gross value of the natural gas sales for various gathering, compression, and transportation 'expenses.'" (Am. Compl. ¶¶ 45–46).

In response to ARU's argument, Cunningham specifies what paragraph of the leases that it believes is violated by ARU's alleged unreasonably high post-production expenses, stating:

8

> The taking of unreasonable, improper, or inflated deductions is in violation of Paragraph 5 of each lease." (*Id.* ¶ 65.)

(Pl.s' Mem. in Opp. at 20, ECF No. 25.) Cunningham goes on to explain that jurisdictions in which the "at the well" rule has been applied, require that the deductions taken must still be reasonable. *Id.* at 20–21 (citing *ConocoPhillips Co. v. Lyon*, 299 P.2d 844, 861 (N.M. 2012); *Heritage Res., Inc. v. Nationsbank*, 939 S.W.2d 118, 122 (Tex. 1996); *Anderson Living Trust v. WPX Energy Production, LLC*, 27 F. Supp. 3d 1188 (D. N.M. 2014), *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2010 WL 476715 (W.D. Okla. Feb. 5, 2010)).

ARU, neither in its Reply, its Supplemental Motion to Dismiss, nor its Reply in Support of its Supplemental Motion Dismiss address any of these cases. Instead, ARU relies upon its arguments that Cunningham has alleged conclusory allegations that fail to state a claim upon which relief can be granted. (Reply at 2, 17, ECF No. 28) (Supp. Mot. to Dismiss at 11, ECF No. 37) (Reply in Support of Supp. Mot. to Dismiss at 6–7, ECF No. 39). And, ARU contends that "[t]he real check on the reasonableness of the amount of costs is the undisputed fact that ARU bears 7/8ths of those costs." (Def.'s Supp. Mot. to Dismiss at 11, ECF No. 37) (citing *Kilmer*, 990 A.2d at 1158 ("[G]as companies have a strong incentive to keep their costs down, as they will be paying seven-eighths of the costs")). ARU's arguments are not well taken.

Cunningham has sufficiently pleaded a claim for breach of contract based upon the averments that the taking of post-production expenses at an unreasonably high amount breaches the leases. As set forth above, Cunningham specifies the provision of the leases it contends are breached by specific conduct of ARU, and how Cunningham is damaged by that conduct. Cunningham need not prove its claim here, just allege a plausible one, which it has done.

9

Moreover, the courts in all four of the cases relied upon by Cunningham applied the "at the well" rule and still required that the deductions to be reasonable. As Cunningham correctly notes:

> Unreasonable amounts can arise from unreasonable practices. One example is *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2010 WL 476715 (W.D. Okla. Feb. 5, 2010), a case in which the lessee, XTO, sold gas from the "wellhead" of each well into a pipeline system owned by Timberland Gathering and Processing Co., which was a wholly-owned subsidiary of XTO. The sale was not an "arm's length" transaction, and Timberland paid XTO 80% of the price paid to Timberland by Duke Energy. The district court held that this was in improper method of determining the "at the well" price, notwithstanding XTO's protestations that the method approximated the market price.

(Pl.'s Mem. in Opp. at 21, ECF No. 25.)

Further, Cunningham again correctly posits that in the present action it has only the ability to "accept as fact that [ARU] is actually employing the net-back method, that it is employing that method properly, or that it is actually bearing 7/8ths of post product costs as it baldly asserts." (*Id.* at 10.) Cunningham is simply not in possession of the information held exclusively by ARU to make these determinations. (Id.) ("[ARU] calls for more detail in its motion to dismiss, knowing all the while it holds—and has repeatedly refused to divulge—the details that would likely prove the company's questionable practices.").

For all these reasons, the Court **DENIES** ARU's Motion to Dismiss Cunningham's breach of contract claim based upon this theory.

### c. Breach of Contract Based on an Accounting

Cunningham alleges that ARU "breached the contract by failing to honor the contractual right of Plaintiff Cunningham to an accounting under the leases." (Am. Compl. ¶ 99.) ARU moves to dismiss based on its assertion that the leases do not contain a right to an accounting.

This Court, however, disagrees. For the reasons set forth below, Cunningham may have the right to an accounting. Therefore, the Court **DENIES** ARU's Motion to Dismiss this claim.

### B. Request for Accounting

Ohio law recognizes a cause of action for accounting in royalty disputes arising from oil and gas leases. *See, e.g., Positron Energy Resources, Inc. v. Weckbacher*, 07CA59, 2009-Ohio-1208, 2009 WL 690583, ¶ 7 (Ohio App. 4th Dist. Mar. 12, 2009) (counterclaim for an accounting of royalties from two oil and gas leases); *Hemsworth v. Kilbarger*, No. 94 CA 20, 1995 WL 563277, at *1 (Ohio 4th Dist. Ct. App. Sept. 21, 1995) (accounting claim for non-payment of royalties); *Mulcahy v. Runyon*, No. 8-81-18, 1983 WL 7244, at *2 (Ohio 3d Dist. Ct. App. Apr. 20, 1983) (same). In the instant action, there is no express language in the leases providing for an accounting. The parties agree that, absent an express or implied contractual right, "[a]n accounting is an equitable remedy" under Ohio law. *McNulty v. PLS Acq. Corp.*, 79025, 2002 WL 31875200, at *12 (Ohio App. 8th Dist. Dec. 26, 2002). Additionally, "Ohio law has consistently held that where there is an adequate remedy at law, an equitable remedy is improper." *Id.*

Where the parties part ways on the equitable accounting issue, *inter alia*, is whether an adequate remedy at law exists here. ARU has moved to dismiss all of Cunningham's legal claims. The Court, however, has found that Cunningham has stated a claim for breach of contract. Cunningham will thus be entitled to much of the information it seeks in discovery. At this juncture it is unclear whether Cunningham can prove his breach of contract claim, and if he can, whether he has an adequate remedy at law.

Alternatively, ARU argues that even if there is not an adequate remedy at law, the equitable accounting claim cannot lie because "the disclaimer of implied covenants in Paragraph

19 of the Leases forecloses this claim." (Def's. Supp. Mot. to Dismiss at 12, ECF No. 37.) Cunningham responds that the general disclaimer of implied covenants in Paragraph 19 is insufficient because Ohio law requires an express disclaimer of the specific implied covenant. (Pl's. Mem. in Opp. at 24–25, ECF No. 25) (citing *Ionno v. Glem-Gery Corp.*, 2 Ohio St. 3d 131, 132) (considering the implied covenant to develop land within a reasonable time, the Ohio Supreme Court found when there was "no express disclaimer," the general rule of an implying a covenant applied)).

Cunningham points out that even courts that have endorsed broad application of a general disclaimer provision have recognized that the implied covenant of good faith and fair dealing might still survive in an oil and gas lease. In *Yoder v. Artex Oil Company*, the Fifth District Appellate Court stated:

> Turning back to Ohio case law, the Supreme Court in *Harris v. Ohio Oil Co.* held that an oil and gas lease is a contract and should be interpreted as such. Also under Ohio case law, it is well-established that every contract has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract. *PHH Mortg. Corp. v. Ramsey*, 10th Dist. Franklin No. 13AP–925, 2014–Ohio–3519, —— N.E.3d ——, ¶ 33 citing *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005–Ohio–4850, 839 N.E.2d 49, ¶ 21 (1st Dist.). "'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Id.* at ¶ 26, 839 N.E.2d 49, quoting Restatement of the Law 2d, Contracts, Section 205, Comment a (1981). Based on the foregoing, it can be logically concluded that an oil and gas lease is a contract, and because it is a contract, an oil and gas lease is subject to the implied covenant of good faith and fair dealing.

14 CA 4, 2014 WL 6467477, at *8 (Ohio App. 5th Dist. Nov. 13, 2014) (finding a virtual dearth of case law on the issue and concluding it unnecessary to determine whether the parties disclaimed the implied covenant of good faith and fair dealing through an express waiver of all implied covenants in the oil and gas lease in that particular case).

The *Yoder* court's assessment is persuasive. *Cf McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (Cal. App. 2d Dist. 2008) ("when two parties enter into an agreement for the sharing of profits that accords one party exclusive access and control over financial records bearing on the profits, the implied covenant accords the other party the right to an accounting of the profits"). That is, this Court cannot say that the implied covenant of good faith and fair dealing is inapplicable to the oil and gas leases presented in the case *sub judice*. Therefore, the Court **DENIES** ARU's Motion to Dismiss this claim.

**C. Unjust Enrichment**

Cunningham brings a claim for unjust enrichment based on ARU's deduction of post-production costs. These are the same facts that support Cunningham's claim for breach of contract. ARU moves for this claim to be dismissed, arguing "Ohio law does not permit recovery on an unjust enrichment claim where a contract exists between the parties that covers the subject area." (Mem. in Supp. of Mot. to Dismiss at 17, ECF No. 23.) ARU contends that, "[t]he Leases govern the parties' relationship and squarely address the calculation of royalties." *Id.*

Cunningham contends that Rule 8 of the Federal Rules of Civil Procedure allows a plaintiff to plead claims in the alternative, and that this Court and its sister district courts applying Ohio law regularly permit breach of contract and the alternative claim of unjust enrichment to advance past the motion to dismiss stage. (Pl.'s Mem. in Opp. at 35–36, ECF No. 25) (citing *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 939-40 (S.D. Ohio 2012) (explaining that "Federal Rule of Civil Procedure 8(d)(3) specifically provides that a party may state as many claims as it has, regardless of consistency" and that "[t]he Court therefore finds there is no basis for dismissing the quasi-contractual claims

or tort claims at this juncture"); *Jent v. BAC Home Loans Servicing, LP*, No. 1:10-CV-00783, 2011 WL 2971846, at *4 (S.D. Ohio July 21, 2011) (Spiegel, J.) (citing Rule 8 and summarily denying a premature attempt at obtaining the dismissal of multiple alternative claims); *Hrnyak v. Mid-West Nat'l Life Ins. Co. of Tenn.*, No. 1:08-CV-2642, 2009 WL 735851, at *5-6 (N.D. Ohio Mar. 20, 2009) (denying motion to dismiss unjust enrichment claim "at this stage in the proceedings" based on alternative pleading); *Boeve v. Nationwide Mut. Ins. Co.*, No. 08-CV-12213, 2008 WL 3915011, at *6 (E.D. Mich. Aug. 20, 2008) (denying motion to dismiss unjust enrichment where the claims remain to be developed in discovery)). Cunningham's arguments are well taken.

Although Ohio law precludes a party from maintaining a claim for unjust enrichment where an express contract covering the same subject matter applies, *Aultman Hosp. Ass'n v. Community Mutual Ins. Co.*, 46 Ohio St.3d 51, 55 (1989), the scope of the parties' contract remains to be developed in discovery. Thus, the Court **DENIES** ARU's Motion to Dismiss Cunningham's claim for unjust enrichment at this juncture.

**D. Fraud**

Cunningham also alleges that the royalty statements contain fraudulent statements "because they consist of and state intentionally improper and incorrect deductions . . . ." (Am. Compl. ¶¶ 106–107.) ARU asserts that Cunningham's fraud claim should also be dismissed, "because its central contention—that deductions of post-production costs were not permitted—is the subject of the breach of contract claim and is governed by the Leases." (Mem. in Supp. of Mot. to Dismiss at 18, ECF No. 23.) Cunningham counters that it is entitled to plead in the alternative, and that it would be conclusory to find that all potential damages under the breach of contract and fraud claims are identical at this juncture. This Court agrees.

14

Generally, under Ohio Law a tort claim such as fraud cannot duplicate a breach of contract claim in its factual and legal basis. *See, e.g., Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005-Ohio-4931 (Ohio Ct. App. 2005). "A tort claim based upon the same actions [as] those upon which a claim upon contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract . . . ." *Id.* at ¶ 34. In similar circumstances, a sister district court concluded, as this Court does here, that:

> It is also unclear at this stage of the litigation if recovery under both causes of action would produce duplicative damages. Dismissal of the fraud claim is therefore premature. Of course, should [the plaintiff] ultimately prevail on her fraud claim, her recoverable damages would be limited to those separate and distinct from any damages awarded on her breach of contract claim.

*Lebo v. Impac Funding Corp.*, 5:11CV1857, 2012 WL 630046, at *6 (N.D. Ohio Feb. 8, 2012), *report and recommendation adopted,* 5:11 CV 1857, 2012 WL 630049 (N.D. Ohio Feb. 27, 2012). Accordingly, the Court **DENIES** ARU's Motion to Dismiss as it relates to the fraud claim.

### IV.

Consistent with the foregoing, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** (ECF No. 22.)

**IT IS SO ORDERED**

11-16-2018
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE

15