UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CUNNINGHAM PROPERTY
MANAGEMENT TRUST,
individually and on behalf of a
class of all others similarly situated,

           Plaintiffs,

v.

ASCENT-RESOURCES –
UTICA, LLC,

           Defendant.

Case No. 2:16-CV-957
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsea M. Vascura

## OPINION AND ORDER

The instant matter is before the Court for consideration of Plaintiff's Motion for Reconsideration. (ECF No. 57). Plaintiff moves the Court to reconsider its Opinion and Order (ECF No. 40) dismissing Plaintiff's breach of contract claim based on the "no deductions" theory. The instant matter is fully briefed and ripe for review. For the reasons that follow, Plaintiff's Motion for Reconsideration is **DENIED**. (ECF No. 57).

I.

**A. Background**

Plaintiff Cunningham Property Management Trust ("Plaintiff") filed an Amended Complaint against Defendant Ascent-Resources-Utica, LLC ("Defendant") alleging, in part, that Defendant improperly deducted post-production costs from Plaintiff's royalty payments in violation of the leases over Plaintiff's land (the "Leases"). (ECF No. 20 at ¶ 96-100).

The relevant terms of the Leases are as follows:

In consideration of the premises the Lessee covenants and agrees:

1

(A) to deliver to the credit of the Lessor in tanks or pipe lines, as royalty, free of cost, the equal one-eighth (1/8) part of all oil produced and saved from the premises, or at the Lessee's option to may Lessor the market price for such one eighth (1/8) royalty at the published rate for oil of like grade and gravity prevailing on the date such oil is run into tanks or pipe lines.

(B) To pay to the Lessor, as royalty for the gas marketed and used off the premises and produced from each well drilled thereon, the sum of one-eighth (1/8) of *the wellhead price* paid to Lessee per thousand cubic feet of such gas so marketed and used, measured in accordance with Boyle's Law for the measurement of gas at varying pressures, on the basis of 10 ounces above 14.73 pounds atmospheric pressure, at a standard base temperature of 60° Fahrenheit, without allowance for temperature and barometric variations; payments or royalty for gas marketed during any calendar month to be on or about the 30th day of the following month.

(C) Lessee to deduct from payments in (A) and (B) above Lessors prorate share of any severance (excise) tax imposed by any governmental body.

(D) In the event Lessee does not sell the gas to others, Lessor shall be paid on the basis of The East Ohio Gas Company field market price at the wellhead for gas of like kind or quality, and on the same basis that East Ohio would pay for such gas, including any escalation in price that East Ohio would pay for such gas as if a contract for the sale of same had been entered into at the time of initial production.

(*Id.* at ¶ 32) (emphasis added).[1]

Defendant filed a motion before this Court on February 2, 2017 seeking dismissal of Plaintiff's Amended Complaint in its entirety. (*See generally* ECF No. 22). On November 16, 2018, the Court granted Defendant's motion, in part, and dismissed Plaintiff's breach of contract claim which was based on the claim that Defendant is not permitted to make post-production deductions from the royalties. (ECF No. 40 at 7).

Thereafter, on August 15, 2019, the Sixth Circuit issued a decision discussing issues of Ohio law that overlapped with some of the issues discussed in this Court's November 16, 2018 Opinion and Order. (*Compare* ECF No. 40 *with Zehentbauer Family Land, LP v. Chesapeake*

---

[1] As this Court noted in its November 16, 2018 Opinion and Order, both parties agree that the Leases' "the wellhead price" language is at the core of their dispute. (ECF No. 40 at 6).

2

*Expl., L.L.C.*, 935 F.3d 496 (6th Cir. 2019)). In light of that decision, Plaintiff moved the Court to reconsider its November 16, 2018 Opinion and Order. (ECF No. 57).

## II.

Plaintiff does not specify whether its Motion for Reconsideration proceeds under Federal Rule of Procedure 59(e) or Federal Rule of Civil Procedure 60(b); the Court considers it under Rule 60(b)(6) given that Plaintiff filed its motion outside the time permitted under Fed. R. Civ. P. 59(e). *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); *see also Donaldson v. Cent. Mich. Univ.*, 109 F. App'x 15, 17 (6th Cir. 2004) ("A motion for reconsideration, filed outside the time permitted under Fed. R. Civ. P. 59(e), is properly construed as a motion for relief from judgment, pursuant to Fed. R. Civ. P. 60(b).").

Rule 60 of the Federal Rules of Civil Procedure provides for relief from judgment in certain circumstances:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

3

Fed. R. Civ. P. 60(b).

To grant or deny a motion for relief from judgment under Rule 60(b) is within the sound discretion of the trial court. *Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (citations omitted). "The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Charter Township of Muskegon v. City of Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002) (citations omitted).

Rule 60(b)(6) should apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Parties seeking relief under Rule 60(b)(6), however, must file their motion within a "reasonable" time, which ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citing *In re Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir. 1981)). A motion for reconsideration is appropriate where there has been an intervening change in the controlling case law. *School Dist. No. 1J Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993).

### III.

In its motion, Plaintiff argues that "[r]econsideration is warranted because, under Ohio law as recently interpreted by the Sixth Circuit, Cunningham has pled a plausible claim for breach of contract based on the taking of deductions." (ECF No. 57 at 5). Plaintiff maintains that the Sixth Circuit's decision in *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.* set forth a "binding analytic track for addressing the 'no-deductions' issue" which departs from "the Northern District

4

of Ohio reasoning previously adopted by [this] Court." (*Id.* at 7). Plaintiff argues that the term "at the well," as interpreted by the Sixth Circuit in *Zehentbauer,* can support an application of either the "at-the-well" rule or the "marketable-product rule," and that the case should turn, as the Sixth Circuit instructs, "on whether the lease language is deemed to invoke the at-the-well rule, the marketable-product rule, or a different valuation system entirely." (*Id.* at 6). Finally, Plaintiff avers that Ohio's rules for contract construction could lead this Court to a result that differs from its previous conclusion. (*Id.* at 7).

Defendant counters arguing that *Zehentbauer* "is not an intervening change in the controlling law warranting reconsideration because it applies the same law this Court relied upon in its" November 16, 2018 Opinion and Order and "does not address the issue decided by this Court." (ECF No. 59 at 1). Defendant also argues that the Sixth Circuit "did not impose any mandate to the district court requiring it to take extrinsic evidence when interpreting the lease." (*Id.* at 2). This Court agrees.

Plaintiff misconstrues the holdings of both the Northern District of Ohio and the Sixth Circuit Court of Appeals. In *Lutz I,* the Northern District of Ohio certified a question to the Supreme Court of Ohio essentially asking them to determine whether Ohio follows the "at the well" rule or some version of the "marketable product" rule.[2] *Lutz v. Chesapeake Appalachia, L.L.C.* (*Lutz I*), 148 Ohio St. 3d 524, 524-525 (Ohio 2016). The Supreme Court of Ohio declined to answer that question and decertified it back to the Northern District of Ohio. *Id.* at 527. In so doing, the Supreme Court of Ohio instructed that oil and gas leases are subject to the traditional

---

[2] "If the at-the-well rule applies, then a producer may deduct post-production costs before calculating a lessor's royalties, even if the contract provides that the royalties are to be calculated based on 'gross' proceeds and 'without deductions.' *EQT Prod. Co. v. Magnum Hunter Prod., Inc.,* 768 F. App'x 459, 466 (6th Cir. 2019) (applying the at-the-well rule under Kentucky law). By contrast, if the marketable-product rule applies, then most post-production costs 'are not deductible even where ... the royalty is to be paid based on [the] market price at the mouth of the well.' *Sternberger,* 894 P.2d at 799." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.,* 935 F.3d at 504.

rules of contract construction, and that the specific language of the lease agreements are controlling. *Id.*

After decertification, the Northern District of Ohio, applying Ohio's rules for contract construction, interpreted "at the well" as unambiguously allowing for the deductions of post-production costs. *Lutz v. Chesapeake Appalachia, L.L.C.* (*Lutz II*), Case No. 4:09-cv-2256, 2017 WL 4810703, *7-8 (N.D. Ohio Oct. 25, 2017). In so doing, the court reasoned that the issue of how royalty payments should be calculated is best framed through the lenses of where the oil or gas will be valued. *Id.* at *7. In other words, the court stated that, although the term "at the well" appears meaningless in isolation, "if we understand the term to 'identify the location' of natural gas valuation for calculating royalties, then the language 'has a logical purpose in the contract.'" *Id.* After reviewing the contract as a whole, the court concluded, with respect to calculating royalty payments, that the parties' "intent was that the *location* for valuing the gas for purposes of computing the royalty was 'at the well.'" *Id.* at *8.

Before coming to its conclusion, however, the court considered whether the "marketable product" rule should apply. *Id.* Declining to apply that rule, the court noted that, although some states recognize an implied "duty to market the gas once it is extracted from the lessor's land, thus requiring the lessee to bear all costs of bringing the product to market," the "Ohio Supreme Court has cautioned that an implied covenant 'arises only when the lease is silent on [a] subject.'" *Id.* The court went on to note that, "[c]onstruing the lease under the 'marketable product' rule would ignore the clear language that royalties are to be paid based on 'market value at the well.'" *Id.*

In this Court's subsequent Opinion and Order, issued November 16, 2018, the undersigned stated that:

> [t]he contractual language in *Lutz II* is materially indistinguishable from the language in the leases in this case, and the *Lutz II* court's reasoning is sound.

> Consequently, for the same reasons found in *Lutz II*, Cunningham's claim that ARU breached their contracts by including post-production deductions in the royalty payments fails to state a claim upon which relief can be granted. Therefore, the Court GRANTS ARU's Motion to Dismiss Cunningham's breach of contract claim based upon this theory.

(ECF No. 40 at 7).

Thereafter, the Sixth Circuit issued an opinion in *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.* discussing whether Ohio courts should apply "at the well" rule or "marketable product" rule. *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d at 504. Plaintiff's Motion for Reconsideration is predicated on the following language from that opinion:

> **Ohio has not adopted either default rule.** *See Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St. 3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, 1013 (Ohio 2016). In 2015, an Ohio district court certified to the Ohio Supreme Court the question "whether Ohio law imposes the 'at-the-well' rule or the 'marketable product' rule." *Id.* at 1012. The Ohio Supreme Court declined to apply either rule, holding instead that, "[u]nder Ohio law, an oil and gas lease is a contract that is subject to the traditional rules of contract construction." *Id.* at 1013. If the lease language is unambiguous, then courts should interpret the lease "so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Id.* at 1012 (quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St. 2d 244, 313 N.E.2d 374, 376 (Ohio 1974)). And "when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning," then courts should consider "[e]xtrinsic evidence . . . to ascertain the intent of the parties." *Id.* (quoting *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 1996-Ohio-393, 667 N.E.2d 949, 952 (Ohio 1996)).

*Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d at 504-505 (emphasis added).

In the instant case, Plaintiff is not entitled to relief on the basis of the Sixth Circuit's decision in *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*. First, the Sixth Circuit's declaration that "Ohio has not adopted either default rule" is neither new nor intervening. The Supreme Court of Ohio, the Northern District of Ohio and this Court have all previously acknowledged that there may be times when either the "at the well" rule or the "marketable product" rule may apply to oil and gas leases interpreted under Ohio law. *See Lutz v. Chesapeake*

*Appalachia, L.L.C.*, 148 Ohio St. 3d at 526-527; *Lutz v. Chesapeake Appalachia, LLC*, 2017 WL 4810703, *7-8; *Cunningham Prop. Mgmt. Trust v. Ascent Res. — Utica, LLC*, 351 F. Supp. 3d 1056, 1062 (S.D. Ohio Nov. 16, 2018). This Court explicitly stated as much in the Opinion and Order that is now the subject of Plaintiff's Motion for Reconsideration. (ECF No. 40 at 7).

Second, the *Lutz II* court interpreted the contractual term—at the well—in accordance with the methodology handed down from the Supreme Court of Ohio and the Sixth Circuit. Specifically, both courts instructed that, under Ohio law, courts should interpret oil and gas leases as contracts subject to the traditional rules of contract construction. *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d at 504-505; *Lutz v. Chesapeake Appalachia, L.L.C. (Lutz I)*, 148 Ohio St. 3d at 527. In accordance with that methodology, the *Lutz II* court looked to the four corners of the lease, and ultimately determined that the term "at the well" unambiguously allowed for post-production deductions. *Lutz v. Chesapeake Appalachia, L.L.C. (Lutz II)*, 2017 WL 4810703 at *18-20; *see D.L. Baker & Co. v. Acosta*, 720 F. Supp. 615, 618 (N.D. Ohio July 21, 1989) (noting that "the determination that a written contract is ambiguous is made as a matter of law by the court"); *see Carrizo (UTICA) LLC v. City of Girard*, Case No. 4:13-CV-00393, 2015 U.S. Dist. LEXIS 40392, at *17 (N.D. Ohio Mar. 30, 2015) (explaining that, under Ohio contract law, "[c]ontractual language is ambiguous only when its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations."). In that same vein, this Court concluded that the contractual language before it was materially indistinguishable from that which was presented to the *Lutz II* court. (ECF No. 40 at 7). Consequently, this Court adopted the *Lutz II* court's reasoning and concluded that Defendant's post-production deductions did not constitute a breach of contract. (*Id.*). In light of

the above, neither court, as Plaintiff contends, relied upon some dogmatic principle that Ohio only applies the "at the well" rule as a matter of law.

Third, Plaintiff's remaining arguments posit that the adoption of traditional contracts principles could lead this Court to a different conclusion; yet, the operative inquiry at this stage is whether reconsideration is appropriate, which it is not.

## IV

In light of the above, the Court finds that Plaintiff's Motion for Reconsideration is not appropriate because the Sixth Circuit's decision in *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.* does not constitute an intervening change in the controlling case law. For that reason, Defendant's Motion for Reconsideration is **DENIED**. (ECF No. 57).

**IT IS SO ORDERED.**

3-13-2020
**DATED**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**